

# Exhibit 4

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/5/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC,

Plaintiffs,

-against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

Defendants.

**OPINION AND ORDER**

1:15-cv-05345 (AJN) (KHP)

KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

On November 1, 2017, Defendants Ilyas and Viktor Khrapunov (the "Khrapunovs") moved to lift the confidentiality designation from certain portions of the deposition transcript of Kenges Rakishev (the "Transcript"), whose deposition testimony they had noticed and obtained, so that they may use Rakishev's testimony as evidence in another legal proceeding between the Khrapunovs and Plaintiff BTA Bank JSC ("BTA Bank") pending in the United Kingdom ("U.K."). (Doc. No. 452.) In their letter motion, the Khrapunovs advised the Court that the entire Transcript had been posted on the internet and was discussed in a news article. The news article contained a link to the Transcript and explained in Russian that the Transcript was provided by an employee of BTA Bank.

Plaintiffs City of Almaty, Kazakhstan and BTA Bank ("Plaintiffs") immediately objected to the motion to lift the confidentiality designation and moved for sanctions against the Khrapunovs. (Doc. No. 453.) Plaintiffs assert that the Khrapunovs leaked the Transcript in violation of the Stipulated Protective Order issued by Judge Alison J. Nathan on November 30, 2016 (the "Confidentiality Order") to bolster their application for permission to lift the

confidentiality designation. The Khrapunovs deny leaking the Transcript and oppose the motion for sanctions.

This Court held an evidentiary hearing on the motions over the course of two days. Although the Khrapunovs initially indicated they would appear by telephone at the hearing (Doc. No. 456), a few days before the hearing, the Khrapunovs claimed they no longer would appear because Swiss law prevented them from being cross-examined by phone. (Doc. No. 463.) On the first day of the hearing on November 17, 2017, Defendant Mukhtar Ablyazov and counsel for the Khrapunovs testified. The parties also submitted stipulated facts and declarations. (Doc. No. 483, 471-81.) At the close of the first day of the evidentiary hearing, Plaintiffs sought leave to cross-examine the Khrapunovs about the leaked Transcript at their upcoming depositions, but otherwise rested on the evidence submitted. This Court adjourned the hearing to permit Plaintiffs to question the Khrapunovs at their depositions, if permitted under Swiss law. At the evidentiary hearing, the Khrapunovs stated that they had no witnesses but introduced several documents into evidence and then explicitly rested their case, stating they had no further evidence.

Plaintiffs filed their post-hearing brief on December 4, 2017, arguing that the evidence showed Ilyas Khrapunov leaked the Transcript. (Doc. No. 490.) The Khrapunovs filed their opposition and brief in support of lifting the confidentiality designation on December 15, 2017. (Doc. No. 502.) As part of their opposition, the Khrapunovs attached several new pieces of evidence as exhibits, including a declaration from an information technology forensics expert reporting the results of his searches for the Transcript in Ilyas Khrapunov's secured email accounts, several news articles, and deposition testimony from other witnesses in this action.

On January 2, 2018, Plaintiffs filed a motion to strike the Khrapunovs' opposition and the exhibits attached thereto on the grounds that the exhibits were never moved into evidence, Plaintiffs were given no notice or opportunity to address the new evidence or cross-examine the witnesses, and most of the new evidence is not properly admissible. (Doc. No. 511.)

On February 13, 2018, the Court held the second day of the hearing during which Plaintiffs offered relevant portions of Ilyas Khrapunov's video deposition testimony. Thereafter, Ilyas Khrapunov's counsel was permitted to and did submit additional portions of Ilyas Khrapunov's deposition transcript for the Court's consideration.

Having carefully considered all of the evidence, and for the reasons set forth below, the Plaintiffs' motions are GRANTED and the Khrapunovs' motion is DENIED.

**FACTS**

The Court assumes the readers' familiarity with the facts of this case and makes the following findings of fact relevant only to the instant motions.

***I. Background***

On June 15, 2017, the Khrapunovs noticed the deposition of Kenges Rakishev, the Chairman of BTA Bank's Board of Directors. (Plaintiffs' Proposed Findings of Facts ("Plaintiffs' Facts"), Doc. No. 490-1 ¶ 2.) Defendant Triadou SPV S.A. ("Triadou") subsequently cross-noticed the deposition. (*Id*. ¶ 3.) On September 15, 2017, before the deposition took place, Viktor Khrapunov posted the Rakishev deposition notice on his personal Facebook page with comments about the deposition (the "Facebook Post") and shared the Facebook Post with Ilyas Khrapunov, who in turn shared the Facebook Post on his own Facebook page. (*Id.* ¶ 10-11.) The Facebook Post announced that the Khrapunovs had noticed the Rakishev deposition and

commented that “Rakishev is not a real stockholder in BTA Bank, but simply its nominal owner” and “errand-boy.” (Declaration of Sophie Roytblat (“Roytblat Decl.”), Doc. No. 482 Ex. 3.) The Facebook Post also stated:

> It is interesting that American law permits the parties . . . to ask the most varied questions, not limited to the subject of the case . . . we are preparing many interesting questions for [Rakishev], including questions about his relationship with Timur Kulibayev, Goga Ashkenazi, and Nursultan Nazarbayev. Stock up on popcorn, dear friends!”

(*Id*.) In light of the Facebook Post, Plaintiffs moved for a protective order limiting the questioning of Rakishev to matters relevant to this action, and the Court granted that request on October 10, 2017. (Doc. No. 439.)

On October 11, 2017, the Khrapunovs and Triadou took the deposition of Rakishev. (Roytblat Decl. ¶ 2.) The deposition was transcribed and recorded by stenography and videography by Magna Legal Services (“Magna”). (Stipulated Testimony, Doc. No. 483 ¶¶ 1, 5.) Pursuant to the Confidentiality Order, Plaintiffs’ counsel designated the entire Transcript confidential. (Plaintiffs’ Facts ¶¶ 1, 8.) The Confidentiality Order provides that upon pain of contempt, confidential discovery material may not be disclosed to any person except the parties and counsel in this action, consultants and witnesses, stenographers, the Court, and Court-appointed masters, and confidential material must be used solely for use in connection with this action. (Doc. No. 253.)

### *II. The Leak Of The Deposition Transcript*

Following the Rakishev deposition, Magna created and distributed an initial rough transcript of Rakishev's testimony. Subsequently, Magna created and distributed a complete final transcript of Rakishev's deposition. (Stipulated Testimony ¶¶ 1(c)-1(d).) On October 16, 2017, counsel for the Khrapunovs received a copy of the Transcript from Magna via e-mail. (*Id.* ¶ 1(e).) On October 17, 2017, counsel for the Khrapunovs e-mailed a copy of the Transcript to Plaintiffs' counsel and requested that Plaintiffs lift the confidentiality designation on selected portions of Rakishev's testimony so that the Khrapunovs might use that testimony in a separate proceeding in the U.K. (Plaintiffs' Facts ¶ 20.)

On October 26, 2017, a copy of the Transcript was uploaded to a file-sharing website named Fex.Net (the "File-Sharing Website") with a "confidential" caption on each page of the Transcript. (Roytblat Decl. Exs. 5, 6, 8.) The only metadata associated with the copy of the Transcript posted on the File-Sharing Website indicated that it was created on "10/24/2017 3:53:20 PM." (Roytblat Decl. ¶ 13; Ex. 7.) Shortly thereafter, a Russian-language "URA-Inform" website published an article entitled "Trial on Laundering of Money Allegedly Stolen in Kazakhstan Takes Unexpected Turn" (the "URA-Inform Article") along with certain portions of the Transcript. (Roytblat Decl. Exs. 8, 8-T.) The URA-Inform Article stated that "[w]e obtained this confidential document from a person representing a BTA Bank employee. He is familiar with the course of the case through his work." (*Id.*)

### *III. Investigation Of The Leak*

After discovering the leak of the Transcript and its posting on the File-Sharing Website, Plaintiffs undertook an investigation to determine the source of the leak. (Plaintiffs' Facts ¶ 38.)

The parties agree that several Magna employees had access to the Transcript and forwarded the Transcript only to counsel for the Plaintiffs, Triadou, and the Khrapunovs. (Stipulated Testimony ¶¶ 1-5.) The parties also agree that Triadou's counsel did not forward, share, or provide access to the Transcript to anyone outside of Triadou's counsel's law firm. (Stipulated Testimony ¶¶ 6-8.) Plaintiffs' counsel provided sworn statements from all of their law firm's employees who had access to the Transcript confirming that none forwarded or shared the Transcript with others. (Plaintiffs' Facts ¶ 37.) Plaintiffs' counsel also provided an affidavit from an information technology staff member who stated he searched the law firm's e-mail servers and confirmed that the Transcript had not been forwarded outside of Plaintiffs' counsel's law firm. (*Id*. ¶ 30.) No official from the City of Almaty or BTA Bank received the Transcript from their counsel. There is no evidence refuting the information in the sworn statements submitted by Plaintiffs' counsel. Counsel for the Khrapunovs testified that they did not forward, share, or provide access to the Transcript to anyone other than Ilyas Khrapunov. (Roytblat Decl. Ex. 18; Evidentiary Hr'g Tr. 66:22-25 Nov. 17, 2017.) Defendant Viktor Khrapunov submitted an affidavit stating that he has never seen, read, or reviewed the Transcript and does not know how the File-Sharing Website obtained the Transcript. (Doc. No. 487 Ex. E.) Defendant Mukhtar Ablyazov testified by phone at the hearing and denied receiving, seeing, or ever having access to the Transcript. (*See* Evidentiary Hr'g Tr. 16:10-17 Nov. 17, 2017.) There is no evidence refuting his testimony. The only party who received a copy of the Transcript was Ilyas Khrapunov.

Counsel for the Khrapunovs admit that they e-mailed the Transcript to Ilyas Khrapunov at his e-mail address, yodamaster@cryptoheaven.com. (Khrapunovs' Resp. to Pls.' Facts, Doc.

No. 503-1 ¶ 50.) Ilyas Khrapunov submitted a short affidavit stating that he received rough and final versions of the Transcript via e-mail but did not share or send the Transcript to anyone. (Doc. No. 487 Ex. F.) At his deposition, Ilyas Khrapunov admitted to reposting the Facebook Post and, when asked why, he responded "why not?" Khrapunov also denied being the source of the leak of the Transcript and suggested that he was set up by BTA Bank or potentially hacked. (Khrapunov Dep. 239:21-240:6, Feb. 2, 2018 ("It was probably a set-up from the beginning by . . . Mr. Nurgabylov. . . . So it was a set-up I think by [BTA BANK]").) When asked if he had any evidence that the leak of the Transcript was a set-up by BTA Bank, Khrapunov replied, "[t]he same way that you don't have any evidence that we [Ilyas and Victor Khrapunov] would have been behind it." (Khrapunov Dep. 240:7-9, Feb. 2, 2018.)

**DISCUSSION**

***I. Motion To Strike***

The Court first addresses Plaintiffs' motion to strike the exhibits to the Khrapunovs' opposition to Plaintiffs' motion for sanctions. (Doc. No. 511.) During the evidentiary hearing before this Court on November 17, 2017, the Khrapunovs explicitly stated that they had no further evidence, subject to the Khrapunovs' availability for deposition, and this Court ordered the parties to file all exhibits on the docket. Despite the Khrapunovs' representation, they then filed new evidence as part of their post-hearing brief on December 4, 2017 without leave from the Court and without explanation or good reason for failing to submit the evidence before the evidentiary hearing. Among the new evidence was the testimony of an expert witness, which Plaintiffs had no opportunity to cross-examine and about which Plaintiffs had no notice.

The Khrapunovs' belated attempt to reopen the evidentiary record after the hearing and without leave of the Court will not be permitted. Accordingly, the exhibits attached to the Khrapunovs' opposition to Plaintiffs' motion for sanctions are stricken, and the Court declines to consider any arguments in the Khrapunovs' brief in opposition to Plaintiffs' motion for sanctions that rely on the new evidence. *See Shred-It USA, Inc. v. Mobile Data Shred, Inc*., 238 F. Supp. 2d 604, 607 (S.D.N.Y. 2002) (precluding new testimony offered after the trial record was closed and "all sides rested at the conclusion of the evidentiary phase of the proceeding" and "defendants had ample opportunity to seek leave to present a rebuttal witness [but] . . . chose not to, and now offer no compelling reason why the trial record should be reopened").

### ***II. Confidentiality Of Deposition Transcript And Its Leak***

Federal Rule of Civil Procedure ("Rule") 26(c) provides for the issuance of protective orders governing discovery. The court may, among other things, prescribe methods for discovery, forbid inquiry into certain matters, and require a deposition to be sealed or that other information be maintained as confidential or revealed only in a specified way. Fed. R. Civ. P. 26(c)(1). The party that seeks a protective order bears the burden of establishing good cause for issuance of that order. *Koch v. Greenberg*, No. 07-cv-9600 (BSJ) (DF), 2012 WL 1449186, at *1 (S.D.N.Y. Apr. 13, 2012). Where a court has entered a global protective order governing general categories of documents, the "good cause showing is temporarily postponed until a party . . . challenges the continued confidential treatment of certain particular documents . . . at which point the burden of establishing the good cause then lies with the party seeking to prevent the disclosure." *Id.*

The failure to abide by a protective order is sanctionable under Rule 37. *See* Fed. R. Civ. P. 37 (advisory committee notes to 1970 amendment) (noting that amendment broadened scope of Rule 37(b)(2) to provide for enforcement of orders issued pursuant to Rule 26(c)); *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir. 2012); *Schiller v. City of New York*, No. 04-cv-7921 (KMK) (JCF), 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) ("Discovery orders that can be enforced through Rule 37(b) include protective orders issued under Federal Rule of Civil Procedure 26(c)."). District courts have wide discretion in selecting appropriate sanctions. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). However, in order for a court to issue sanctions under Rule 37, there must be a valid court order in force before sanctions may be imposed. *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991). Further, Rule 37 requires that the sanctions be "just" and "relate to the particular claim to which the discovery order was addressed." *Id.* at 1366.

The Court turns first to the Khrapunovs' request to lift the confidentiality designation from certain portions of the Transcript. The testimony that the Khrapunovs seek to use in the U.K. proceeding concerns BTA Bank's finances and control of assets and entities that the Khrapunovs contend conflict with statements made by BTA Bank in the U.K. proceeding. Non-public financial information of a company is the type of information that can be designated as confidential for discovery purposes, and there is good cause for maintaining it as confidential. *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) ("Documents falling into categories commonly sealed are those containing trade secrets, confidential research and

development information, marketing plans, revenue information, pricing information, and the like.")

The Khrapunovs correctly recognized that they cannot use the Transcript in another proceeding or make it public without Court permission because it was designated by Plaintiffs as confidential under the Confidentiality Order issued in this case. The Court discerns no compelling need for the Transcript to be made public. Moreover, the testimony that is the subject of this motion appears to have no relevance to the claims pending in this Court. Thus, the Khrapunovs appear to have improperly noticed the deposition of Rakishev at least in part to develop information for use in the U.K. litigation. Accordingly, the Khrapunovs' request to lift the confidentiality designation from portions of the Rakishev deposition is denied. To the extent the Khrapunovs wish to develop evidence for the U.K. matter, they should direct their request to the U.K. tribunal.

Turning to the leak of the Transcript, there is only one party who received it and two parties who had a motive to leak it: Ilyas and Viktor Khrapunov. Though Ilyas Khrapunov testified under oath that he was not responsible for the leak of the Transcript, his statements regarding the leak are not credible, and the evidence before the Court strongly supports a finding that Ilyas Khrapunov was, in fact, responsible for leaking the Transcript to URA-Inform and/or the File-Sharing Website.

First, the record establishes that only court reporters, counsel, and Ilyas Khrapunov had access to the Transcript. The Court reporters have offered sworn statements detailing how they handled the Transcript, had no reason to leak the Transcript, and, as Plaintiffs point out, have an obvious professional interest in protecting court-ordered confidentiality. Counsel for the

parties similarly have an interest in maintaining their professional obligation to abide by court orders. Both the court reporters and counsel have testified before this Court, submitted to cross-examination, and confirmed that they did not distribute the Transcript except to Ilyas Khrapunov at yodamaster@cryptoheaven.com. Thus, Ilyas Khrapunov is the only party in this action who had access to, and therefore the ability to share, the Transcript with the public.

Second, Ilyas Khrapunov had the motive to leak the transcript. The Khrapunovs are involved in litigation with BTA Bank in the U.K., asked certain questions during the Rakishev deposition relevant only to the U.K. proceeding, and then asked this Court to lift the confidentiality designation in order to use the deposition testimony in the U.K. proceeding. Before Rakishev's deposition, Viktor Khrapunov announced on Facebook that the Khrapunovs had noticed the deposition, that the Khrapunovs intended to question Rakishev on issues outside the scope of this case, and that his readers should "stock up on popcorn." (Roytblat Decl. Ex. 3.) The context in which Viktor and Ilyas Khrapunov invited their Facebook audience to stock up on popcorn suggests they intended to publicly share Rakishev's deposition testimony after it was obtained. It also appears that, notwithstanding this Court's Order restricting questioning to matters relevant to this litigation, the Khrapunovs elicited testimony from Rakishev relevant only to the U.K. litigation. It is not a stretch to conclude that Ilyas Khrapunov followed through with the Facebook threat of asking irrelevant questions and publicizing Rakishev's testimony by leaking the Transcript and/or facilitating its publication on the internet.

Although Ilyas Khrapunov has suggested that he might have been set up by BTA Bank, he is the one who noticed the deposition, discussed it in a public forum, and seeks to use it in another litigation. There is no evidence of a "set-up," nor is a set-up plausible because the

Khrapunovs are the only parties who would benefit from the publication of the Transcript by publicizing otherwise confidential information to embarrass or expose BTA Bank and to use the exposed information in the U.K. litigation against BTA Bank. Similarly, although Ilyas Khrapunov suggests that certain of his e-mail accounts have been hacked in the past and that his yoda master account might have been hacked, there is no evidence to support this theory other than Ilyas Khrapunov's vague assertion. The Court also notes that CryptoHeaven advertises itself as the "premier provider of secure email hosting and encrypted email hosting. . . [that ensures] end-to-end security that is unmatched in the industry." *See CryptoHeaven world's safest email, Frequently Asked Questions,* https://www.cryptoheaven.com/Support/FAQ.htm (last visited Mar. 1, 2018).

Finally, the Court does not find Ilyas Khrapunov's testimony or affidavit credible. Ilyas Khrapunov has played games with this Court in the past, and his violation of the Confidentiality Order here is simply another example of this behavior. For example, after Plaintiffs filed a motion requesting the evidentiary hearing, the Khrapunovs submitted an affidavit and volunteered to appear by phone during any such hearing, presumably to bolster their credibility while the Court was deciding whether to hold an evidentiary hearing. But days before the scheduled hearing, the Khrapunovs retracted their offer to appear via telephone, citing a provision of Swiss law preventing them from being cross-examined by phone—a law about which they likely were already aware given past disputes about their leaving Switzerland to be deposed. The Court also observed Ilyas Khrapunov's deposition testimony and demeanor in a video clip of his deposition and finds him to be not credible and, in fact, cavalier about the leak, testifying that he had no evidence to support his theory that he was set up by BTA Bank "the

same way [Plaintiffs] don't have any evidence that we would have been behind it." (Khrapunov Dep. 240:2-9, Feb. 2, 2018.) His tone and delivery conveyed his "catch me if you can" attitude and, in this Court's view, demonstrated his lack of credibility.

In sum, the evidence before this Court demonstrates clearly and convincingly that Ilyas Khrapunov was the source of the leak of the Transcript in violation of the Confidentiality Order.[1] Consequently, sanctions against him are warranted. Although the Court finds that Ilyas Khrapunov was responsible for the leak, both Viktor and Ilyas Khrapunov should be sanctioned because the evidence demonstrates that the Khrapunovs have been working closely together and have a joint interest in this litigation, and that Ilyas Khrapunov leaked the Transcript on behalf of himself and Viktor Khrapunov (as demonstrated by Viktor Khrapunov's Facebook Post).

The party damaged by the conduct warranting sanctions should be made whole for the harm it has suffered. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130-31 (2d Cir. 1979). Sanctions may include prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence, or requiring the "disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including the attorney's fees caused by the failure . . . ." Fed. R. Civ. P. 37(b)(2)(B), (C).

[1] To the extent Plaintiffs seek a court order holding the Khrapunovs in contempt of the Court for violating the Confidentiality Order, in addition to the sanctions awarded in this Opinion and Order, the Court certifies the facts stated herein and holds that the Khrapunovs' conduct rises to the level of contempt. *See Lynch v. Southampton Animal Shelter Found., Inc.*, No. 10-cv-2917 (ADS) (ETB), 2013 WL 80178, at *4 (E.D.N.Y. Jan. 7, 2013) (holding that pursuant to 28 U.S.C. § 636(e), Magistrate Judges may conduct a hearing but function only to certify facts to the District Judge, who may then conduct a de novo hearing and issue an order of contempt). To the extent either party here challenges this Court's authority to issue sanctions pursuant to Rule 37, the Court also recommends sanctions pursuant to the Court's inherent power to manage its own affairs in light of what this Court finds is the Khrapunovs' bad faith in leaking the Transcript. *See Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014) ("a court may [] impose sanctions under its inherent power [if] the party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

When exercising discretion to impose the appropriate sanction under Rule 37, courts in this Circuit are "guided by the following factors: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Constr.*, 88 F. Supp. 3d 250, 262 (S.D.N.Y. 2015) (internal quotation marks omitted).

Here, there is no question that the leak of the Transcript was willful, as it was designated confidential pursuant to the Confidentiality Order and each page was labeled "confidential." Thus, even if not informed by counsel that the Transcript could not be publicly shared, the Transcript itself made that clear by its confidential label. Further, the Khrapunovs' Facebook Post suggests willfulness insofar as it indicates a premeditated plan to publicize information learned in the deposition. The Confidentiality Order also provides a warning as to the consequences of noncompliance, including contempt of court. As for the duration of the non-compliance, disclosures on the internet are potentially permanent, as any number of people could have downloaded the Transcript and now have the ability to share it at any time in the future.

The Khrapunovs' leaking of the Transcript has led to significant expenses to the parties and unnecessary expenditure of Court resources. In order to make Plaintiffs whole, the Khrapunovs shall be prohibited from using the Transcript in this action or any other action. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (sanctions for violating a discovery order may include an order prohibiting the offending party "from introducing designated matters in evidence"). Additionally, they shall pay Plaintiffs' attorneys' fees and costs incurred in connection with the

sanctions motion, evidentiary hearing, and subsequent briefing (including, without limitation, the motion to strike). *See Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018) (costs associated with non-compliance with discovery obligations "must be placed on the uncooperative opponent in order to deter recalcitrant parties from the cavalier destruction or concealment of materials that the law requires them to retain and disclose."); *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990) ("[m]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the clearly erroneous or contrary to law standard"). Any lesser sanction would be insufficient punishment for the breach because it would enable the Khrapunovs to simply pay for breaches of court orders and transform compliance with them into a mere financial calculation. The imposed sanctions also take into account the Khrapunovs' improper use of the Federal Rules of Civil Procedure to obtain information for actions before other tribunals.[2]

Plaintiffs' counsel shall file their application for attorneys' fees and costs by March 16, 2018. The Khrapunovs may file and serve any objection to the expense claim by March 30, 2018. Any reply must be filed and served by April 6, 2018.

**CONCLUSION**

For all of the above reasons, Plaintiffs' motion for sanctions (Doc. No. 453) is GRANTED, Plaintiffs' motion to strike is GRANTED (Doc. No. 511), and the Khrapunovs' motion to lift the

[2] To the extent Plaintiffs requested appointment of a special master to oversee discovery as a sanction, the request is denied. This Court has been actively managing discovery and there has been no showing that a special master is necessary. Moreover, this sanction is not an appropriate remedy for the leak of the Transcript because it is not necessary to make Plaintiffs whole.

confidentiality designation from portions of the Rakishev deposition is DENIED (Doc. No. 452). Plaintiffs are ORDERED to file and serve an affidavit and supporting materials identifying their expenses, including attorneys' fees, in accordance with this Order.

SO ORDERED.

Dated: March 5, 2018
New York, New York

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge