

PETER M. SKINNER
Tel: (212) 393-3654
Email: pskinner@bsfllp.com

April 17, 2019

**BY ECF**

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

      Re:    *City of Almaty, Kazakhstan, et ano. v. Gennady Petelin*,
            Case No. 18-mc-227 (AJN) (KHP)

Dear Judge Parker:

      We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities"). We write pursuant Rule III(b) of the Court's Individual Rules to respectfully request a Pre-Motion Conference in advance of a motion for contempt and sanctions against Gennady Petelin. As the motion will detail, and as we briefly set out below, Petelin lied under oath and knowingly produced fake documents in connection with the Court's orders compelling him to respond to subpoenas issued in *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,* Case No. 15 Civ. 5345 (AJN) (KHP) (the "Main Action"). [*See* Case No. 18-mc-227, ECF Nos. 28, 33, 38 (orders compelling Petelin's subpoena compliance).]

      When Petelin — after multiple attempts to evade discovery — finally produced documents and sat for a deposition, he committed a clear fraud upon the Court. First, he produced fake documents in response to the subpoena enforced in this miscellaneous action. While the Kazakh Entities had always suspected that Petelin's documents were fake, and while the preponderance of the evidence supported that suspicion, newly-obtained documents from an independent third party definitively establish that Petelin's documents were altered from their original state. Second, Petelin lied under oath when he testified that the documents he had produced were authentic and about the transactions described in those documents. He did all of this with the apparent assistance of Ilyas Khrapunov, who served as the intermediary between Petelin and Petelin's counsel.

      Petelin should be held in contempt and ordered to pay the Kazakh Entities' fees and costs associated with pursuing discovery from him — fees and costs that are now demonstrated to have been a needless waste — as well as their fees and costs in pursuing this motion. In addition, Petelin should be compelled to reveal from whom he received the fake documents.

## Background

      Petelin's deception served one purpose: to further the defendants' false narrative in the Main Action that Petelin — and not Mukhtar Ablyazov, using stolen funds — had funded an entity called Northern Seas Waterage ("NSW"). As the Court is aware, NSW received $440 million, $70 million of which was used to fund the U.S. investments of Triadou SPV S.A. The parties in the Main Action agree that NSW got its money from a company called Zhaikmunai



LLP.  But they disagree about why Zhaikmunai paid NSW.

The Kazakh Entities maintain that Ablyazov funded Zhaikmunai with stolen money, that Zhaikmunai was obligated to repay that money to Ablyazov, and that Ablyazov told Zhaikmunai to pay the money he was owed to NSW, in order to evade global freezing orders against him. The Defendants in the Main Action claim in contrast that Petelin owned the loan to Zhaikmunai, that Petelin transferred the loan to NSW, and that Petelin told Zhaikmunai to pay NSW.

Both narratives are supported by different versions of the same Zhaikmunai documents. Frank Monstrey (the former CEO of Zhaikmunai) produced Zhaikmunai-related documents that were executed by Ablyazov.  After Monstrey's documents were produced in the Main Action, Petelin said he also had documents to produce, asked for more time to retrieve them, and then produced the exact same documents, but with his signature (or that of his former business partner) rather than Ablyazov's.  There were thus two competing sets of the same documents, with each side claiming theirs were authentic and the others' were forged.

As both sides knew, the Zhaikmunai documents were also in the hands of a corporate services provider called SMP Partners Limited, which is located in the Isle of Man.  SMP had received those documents at the time of the transactions at issue, long before this litigation began.  SMP thus held the key to resolving the authenticity dispute.

But there was no dispute until Petelin produced his version of the documents on August 21, 2018, just ten days before the fact discovery cutoff in the Main Action.  At that point, there was little that could be done to get SMP's documents.  The Kazakh Entities tried to get Petelin, Ablyazov, and Monstrey to request them, but that led nowhere.  The Kazakh Entities also asked the Defendants in the Main Action to consent to a Hague request to SMP so that all parties could see whose signature was on SMP's copy of the documents.  But the Defendants declined.

And that is where things may have stood but for some extraordinary recent events.  The Kazakh Entities then promptly produced the SMP documents to the Defendants in the Main Action, on April 2, 2019.

The SMP documents produced to the Republic of Kazakhstan contained SMP's copies of the Zhaikmunai documents.  SMP's copies were signed by Ablyazov, proving that Ablyazov, with Ilyas's help, funded NSW.[1]  A simple comparison of the different versions of just two

---

[1] The space needed to explain this conclusion far exceeds the limits of this letter application for a pre-hearing conference.  Indeed, there is insufficient space even to explain precisely what the

n/a



documents — (1) a letter to SMP attesting to the transfer to NSW of the interests in a company called Lineford and (2) a release — demonstrates that Petelin's documents were altered to substitute Petelin's signature for Ablyazov's.  *See* Appendix A and Exhibits 2-7.  As the Kazakh Entities will establish in their motion for contempt and sanctions, this third party documentary evidence — as well as many other SMP records that explain in detail the events and transactions leading up to Ablyazov's acquisition of the Zhaikmunai investment — prove at least two things: (1) that Petelin produced forged documents, and (2) that Petelin lied at his deposition when he testified about Zhaikmunai, transactions related to Zhaikmunai, and the Zhaikmunai documents.

## Argument

Where a party has "committed fraud on the court by fabricating evidence and making misrepresentations to the Court, it is the Court's inherent authority that provides the primary basis" to issue sanctions. *Jung v. Neschis*, No. 01-cv-6993, 2009 WL 762835, at *13 (S.D.N.Y. Mar. 23, 2009).  "A fraud on the court occurs where a party: (1) improperly influence[es] the trier, (2) unfairly hamper[s] the presentation of the opposing party's claim or defense, (3) lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, or (4) knowingly submit[s] fraudulent documents to the Court[.]" *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 395 (S.D.N.Y. 2010).

Petelin's actions here are in line with conduct that other courts have found justifies sanctions.  The SMP documents confirm that Petelin not only lied under oath, but submitted fraudulent documents in response to the Court's orders.  In similar circumstances, where "parties with no interest in the outcome of this litigation produced unaltered cop[ies]" and a party "produced a copy that was altered in a manner that directly supports her claims in this litigation" courts have found that the independent parties' documents "strongly indicate[d] that [the defendant was] responsible for the alteration." *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002).  And many courts in this District have ordered sanctions where a party lied under oath and/or produced fabricated documents. *See, e.g.*, *Jung*, 2009 WL 762835 at *19 (plaintiff submitted false evidence to the court regarding CT scans, as well as provided false statements regarding the authenticity of certain documents); *Hargrove v. Riley*, No. 04-cv-4587, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) (a "severe sanction" was warranted where plaintiff submitted false documents, and where the "forgeries were intentional); *Shangold v. Walt Disney Co.*, No. 03-cv-9522, 2006 WL 71672, at *5-6 (S.D.N.Y. Jan. 12, 2006) (ordering sanctions and attorneys' fees where "[p]laintiffs fabricated evidence and manipulated the judicial process.").

For all of these reasons, the Kazakh Entities respectfully request a Pre-Motion Conference with the Court to address their contemplated motion for contempt and sanctions.

Respectfully,

  /s/ Peter M. Skinner
Peter M. Skinner

---

documents at issue are or why it matters who signed them.  We will thoroughly address these issues in the briefing supporting the Kazakh Entities' contempt and sanctions motion.



cc: Eugene Illovsky, Counsel to Gennady Petelin (via ECF)
Counsel of Record in the Main Action (by email)

4