```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CITY OF ALMATY, et ano,

            Plaintiffs,

       v.                                18 Misc. 227 (AJN)(KHP)

GENNADY PETELIN,

            Defendant.
                                         Telephone Conference
------------------------------x

                                         New York, N.Y.
                                         June 4, 2019
                                         3:15 p.m.
Before:

            HON. KATHARINE H. PARKER,

                                         U.S. Magistrate Judge

                          APPEARANCES

BOIES SCHILLER FLEXNER LLP
     Attorneys for Plaintiffs
BY:  PETER M. SKINNER
     MATTHEW L. SCHWARTZ
     CRAIG A. WENNER

EUGENE G. ILLOVSKY (via speakerphone)
     Attorney for Defendant Petelin

SOLOMON & CRAMER LLP
     Attorneys for Khrapunov defendants
BY:  ANDREW T. SOLOMON


BLANK ROME LLP
     Attorneys for Defendant Triadou
BY:  ALEX HASSID
     DEBORAH A. SKAKEL
```

1            (Case called; appearances noted)
2            THE COURT:  Because you're not needed, Mr. Illovsky,
3   in the main action, I'd like to address the proposed motion
4   with respect to your client first.
5            Mr. Wenner, why don't you proceed with the proposed
6   sanction motion.
7            MR. WENNER:  Thank you, your Honor.
8            Craig Wenner, Boies Schiller.
9            I assume I can be heard on the phone.
10           THE COURT:  Can you hear, Mr. Illovsky?
11           MR. ILLOVSKY:  Yes, I can.  Thank you.
12           THE COURT:  OK.
13           MR. WENNER:  We had called Mr. Illovsky on the phone
14  to tell him about our anticipated motion.  We managed to speak.
15  We had wanted to file it quickly, but he requested just for one
16  week, and we waited the week to file.  We've discussed this on
17  the phone just the one time.  We filed our letter and haven't
18  gotten a response yet.
19           I think it should be a fairly straightforward process.
20  We incurred the burden and expense of pursuing discovery from
21  Mr. Petelin, and perhaps I could just give a quick chronology,
22  which I think will also be relevant to the question about the
23  S&P Partners evidence.
24           THE COURT:  OK.
25           MR. WENNER:  On June 28, 2018, so mid one year ago,

1   the Court ordered Frank Monstrey to be deposed, and by this
2   point we had already been litigating the subpoenas in the
3   miscellaneous matter with Mr. Petelin.
4           THE COURT:  Right.
5           MR. WENNER:  The following day, on June 29, he asked
6   for more time for his document production and subpoena and
7   deposition in order to produce documents that he was obtaining
8   from an unnamed source overseas.
9           THE COURT:  Right.
10          MR. WENNER:  The Court granted him the extra time to
11  obtain those documents.  In the interim we deposed Mr. Monstrey
12  in mid-July, and Mr. Petelin was scheduled to be deposed about
13  a week later, in late July.  And the day before Mr. Monstrey's
14  deposition, he notified the Court that he had not yet obtained
15  those documents that he was still trying to obtain from
16  ultimately Russia, he says.
17          THE COURT:  Right.
18          MR. WENNER:  And then on July 20, just after Mr.
19  Monstrey's deposition, Mr. Petelin had a health issue and asked
20  to adjourn his deposition, which the Court granted.  He was
21  ultimately deposed in late August, and ten days before his
22  deposition, we received the production of documents from him.
23  These were the documents from this unnamed source overseas.
24  And at this point we had obtained from Frank Monstrey a set of
25  documents describing a series of deals in transferring the

1  right to receive a payment relating to an interest in a company
2  called Jacques 9.  That payment ultimately went to the company
3  Northern Seas Waterage, and according to the deal documents and
4  according to Frank Monstrey's testimony, this was to basically
5  buy out defendant Mukhtar Ablyazov.
6       THE COURT:  OK.  That's the 440 million.
7       MR. WENNER:  That's the 440 million.
8       THE COURT:  Right.
9       MR. WENNER:  So coming to Mr. Petelin's deposition, we
10 had these documents from Frank Monstrey, we had the narrative
11 that we were going to prove ultimately at trial and then in the
12 documents we received from Mr. Petelin were those documents
13 handful of the same documents Frank Monstrey produced, but
14 rather than signed by Mr. Ablyazov, they were signed by Gennady
15 Petelin.
16      We then deposed him and asked him questions and heard
17 his narrative response explaining the deal, and now we had at
18 that point two contrary narratives, two alternative stories.
19 We could prove that ours was the correct one, but we would not
20 have moved at that point for any kind of sanctions like we are
21 now.  That would have been an issue for a fact finder at a
22 trial to decide our narrative is the correct one, is the true
23 one.  Perhaps sanctions at that point, I don't know.  But it's
24 the farthest we had at that moment.
25      We then learned at Mr. Petelin's deposition that we

1  had these contrary documents; that defendants were going to
2  rely on an alternative universe of documents and a narrative
3  and they were going to challenge the authenticity of Mr.
4  Monstrey's documents.
5           THE COURT:  OK.
6           MR. WENNER:  We then took a couple of steps to try and
7  obtain information from S&P Partners.  We broached the Hague
8  request with the defendants, and it was after the close of
9  discovery at this point.  They declined to agree to a Hague
10 request.  We asked Mr. Monstrey to go request the documents
11 from S&P Partners, and we pursued the documents with a line of
12 questioning with Mr. Ablyazov at his deposition, and he
13 completely denied any knowledge or involvement with S&P
14 Partners.  We reached a couple of dead ends and actually
15 obtained documents relating to S&P Partners.
16          THE COURT:  Did you get a signature expert to look at
17 that?
18          MR. WENNER:  We did, your Honor.  We've offered as an
19 affirmative expert and we've exchanged rebuttal reports already
20 showing that our version is authentic.  It's the version signed
21 by Mukhtar Ablyazov and cosigned or witnessed by Ilyas
22 Khrapunov.
23          THE COURT:  OK.
24          MR. WENNER:  So all the while we're preparing to prove
25 the authenticity, prove our narrative, trying to obtain

1   documents from the original source, the original custodian, the
2   person who had uncontroverted proof that the documents as they
3   were made at the time were the ones we say they were.
4        In January 2019, we learned that independent of our
5   efforts, the Kazak criminal investigation, government, had
6   received from the Isle of Man -- I should say it was in January
7   2019, just to get the chronology right, that the Isle of Man
8   provided their response to the Kazak government.  It was not
9   until a month later, mid-February, that we learned that that
10  had been a production of documents by the Isle of Man, and we
11  put under seal certain details regarding that criminal
12  investigation by the Kazak authorities, so I won't go into too
13  much detail, but it was a month after that that we were able to
14  actually put eyes on the documents.  And then by March 31 we
15  had the permission to use them.  And then with two days we
16  produced them, on April 7.
17       Having then produced us those documents, being in a
18  position to use them in another litigation, we prepared and
19  filed our sanctions motion, teed that up as quickly as we could
20  regarding Mr. Petelin.  And those documents from the Isle of
21  Man, from a corporate services provider that has no skin in the
22  game other than to provide a truthful response to the attorney
23  general of the Isle of Man shows that the documents they had in
24  their custody and control were the ones that we had put forward
25  through -- the ones that Mr. Monstrey had produced.

1          THE COURT:  That were signed by defendant Ablyazov.
2          MR. WENNER:  Right, and that the version -- they had
3   no record, had no evidence, disclaimed any representation of
4   Mr. Petelin.
5          THE COURT:  And Mr. Petelin testified during his
6   deposition that he was the signatory on the documents?
7          MR. WENNER:  Yes, that he signed those documents; that
8   he provided the instructions to S&P Partners regarding this
9   transaction; he stepped into the shoes of Mr. Ablyazov.  And
10  that was false.
11         THE COURT:  OK.
12         MR. WENNER:  That was fake.
13         THE COURT:  OK.
14         MR. WENNER:  We think as far as the process going
15  forward, it should be fairly simple.  We had subpoenaed Mr.
16  Petelin in a miscellaneous action that was heard in California.
17  That court transferred it to your Honor.
18         THE COURT:  Right.
19         MR. WENNER:  You have jurisdiction over Mr. Petelin.
20  We suggest that your Honor call him, have a hearing, hear him
21  testify, let us confront him.  You'll be able to make a
22  credibility determination.  We can have a posttrial submission,
23  and your Honor can determine the merits of the sanctions at
24  that point.  It can be fairly straightforward and simple, and I
25  should say that this is a separate action, completely

1   independent of any question about the use of those documents in
2   the main action.
3           THE COURT:  OK.
4           MR. WENNER:  In fact, defendants in the main action
5   are not parties to the miscellaneous action, so it should be us
6   questioning Mr. Petelin about his subpoena responses and
7   confronting him with those documents.  That would the hearing
8   that we would ask for.
9           THE COURT:  OK.
10          Mr. Illovsky, I'd like to hear from you.
11          MR. ILLOVSKY:  Yes, your Honor.  Thank you.
12          It seems to me that any motion for sanctions against
13  Mr. Petelin should, I think, best be taken up after the trial.
14  This is all pretty complicated stuff and the deposition was
15  several months ago, but I think I would be asking for a little
16  bit of discovery before the hearing, before any sanctions are
17  imposed, to explore the authenticity of these newly produced
18  documents.
19          Apparently there are witnesses on the Isle of Man.
20  Somebody signed a declaration, and there's a lot of detail as
21  somebody that I think on Mr. Petelin's behalf I would like to
22  question.  I know that there's been a lot of discovery water
23  under the bridge, and a lot of it's under seal, and I haven't
24  seen.  But I have seen from public court filings allegations
25  that the Kazakhstan plaintiffs have paid a witness, and so I

think on Mr. Petelin's behalf I should be able to explore that.

But because I'm assuming that the authenticity of -- the subpoena enforcement case is a separate action.  I'm assuming that the authenticity of these documents is going to be an issue at the trial, so it seems to me it would be better for the Court and for the parties to have the authenticity of these documents worked out at the trial by the parties, and it may obviate the motion, depending on what the Court hears and decides at the trial.  If there's anything left, Mr. Petelin can raise that in a subsequent hearing on the motion, if there is one.

And also it seems like it would be better, if there is this important authenticity issue on documents, I don't know whether it is or it isn't to the case, but if it is important, it seems like it would be better and fairer to have the issue litigated among the parties who know all the complicated stuff rather than with a third party who's not as familiar with the facts.  You know, there may be findings that create some kind of an estoppel later, so it just seems to me, to repeat myself maybe, maybe for judicial economy purposes and for the purposes of getting the Court the fullest and fairest explication of all the issues, that the motion should be deferred until after the trial.

THE COURT:  OK.  I'm not going to defer the motion.  I will permit you a certain amount of time to gain some

1  information.  I think it's only fair, Mr. Illovsky, that you
2  see the evidence that the plaintiffs here have demonstrating
3  that your client's testimony is perjured, so I will give you
4  the rest of the summer to exchange that information.  I'd like
5  to have an evidentiary hearing on September 24 or 25.
6          Can you look at your calendars and let me know which
7  of those days works.
8          MR. WENNER:  Your Honor, for plaintiffs either day is
9  fine.
10          THE COURT:  Mr. Illovsky.
11          MR. ILLOVSKY:  Yes, your Honor.  Hold on.  I've just
12  got to check the surrounding dates.
13          Yes, either day.  Either day would work.  The 24th may
14  be an tiny bit better than the 25th.
15          THE COURT:  OK.  I'll conduct an evidentiary hearing
16  on the 24th.  I don't expect it to last more than a day.  You
17  should have all of your witnesses and documents ready to go.
18  If there's any technology that you need, you can talk with my
19  deputy about that.  I'll issue an order scheduling that
20  evidentiary hearing.  Just bring all the exhibits, and you can
21  do a postfiling brief as to proposed findings of fact and
22  conclusions of law after the factual hearing.  OK?
23          MR. WENNER:  Your Honor --
24          MR. ILLOVSKY:  Sorry.
25          THE COURT:  First, Mr. Wenner.

1          Then I'll hear from, Mr. Illovsky.

2          MR. WENNER:  Just a couple points to raise, both
3   logistics and substantive, on one point.

4          As far as the limited discovery, we would also seek to
5   get some limited discovery from Mr. Petelin as well.  One thing
6   we were never able to obtain, for example, is the identity of
7   the person who provided him the documents from overseas, this
8   undisclosed source.  We do not know who provided Mr. Petelin
9   the forged documents.

10         THE COURT:  OK.

11         MR. WENNER:  So to present a full hearing before your
12  Honor, to give you all the facts, we would like to be able to
13  show who it was that provided Mr. Petelin the fake documents
14  from overseas.

15         THE COURT:  Did you ask Mr. Petelin who provided the
16  documents at his deposition?

17         MR. WENNER:  Yes, your Honor.

18         THE COURT:  And what was the answer?

19         MR. WENNER:  He refused to answer.

20         THE COURT:  Why?  On what basis?

21         MR. WENNER:  Because of concern of this person is in
22  Russia, and I will be paraphrasing at this point, but security
23  concerns for that person's safety.

24         THE COURT:  Mr. Illovsky, that's not an objection
25  that's an appropriate objection in a deposition.  It's not a

|   |   |
|---|---|
| 1 | basis to direct a witness not to answer.  You could move for a |
| 2 | protective order, but you didn't do that. |
| 3 |     MR. ILLOVSKY:  Your Honor, I don't think Mr. Wenner is |
| 4 | saying that I instructed Mr. Petelin not to answer. |
| 5 |     THE COURT:  OK.  I apologize if I made an assumption. |
| 6 |     All right.  The parties can conduct discovery, limited |
| 7 | discovery -- again, just document requests, not depositions -- |
| 8 | document requests to get the documents.  I don't know if you |
| 9 | think interrogatories would be helpful. |
| 10 |     MR. WENNER:  At the very least, your Honor, on this |
| 11 | question, Who provided you the documents? |
| 12 |     THE COURT:  I'll permit up to five contention |
| 13 | interrogatories.  Document requests and interrogatories should |
| 14 | be served within two weeks of today, and they should be |
| 15 | answered within 30 days after they are served. |
| 16 |     MR. WENNER:  And your Honor, as far as our production |
| 17 | of documents to Mr. Petelin, the protective order in this case |
| 18 | allows for limited disclosures to witnesses, provided they sign |
| 19 | the NDA for the purpose of securing their deposition testimony, |
| 20 | for example. |
| 21 |     THE COURT:  Right. |
| 22 |     MR. WENNER:  We're sort of on the line or just out of |
| 23 | bounds of what the protective order provides for in this case. |
| 24 | We just want to be clear that we will be providing him |
| 25 | documents potentially that are marked confidential under the |

Case 1:18-mc-00227-AJN-KHP   Document 54   Filed 06/28/19   Page 13 of 14    13
J64WmisC

1    protective order for this purpose.

2             THE COURT:  I will permit that for this purpose, and
3    the documents that are disclosed will be subject to the terms
4    of the protective order in the main action.

5             MR. WENNER:  And your Honor, the only other question
6    we want to raise, if your Honor will recall, Mr. Ilyas
7    Khrapunov had served as the intermediary for some period of
8    time between Mr. Petelin and his counsel in responding to the
9    deposition and document subpoenas.  We've since learned and
10   believe that Mr. Petelin's counsel is now partners with Mr.
11   Khrapunov's California counsel in the same firm.  We know this
12   is not a criminal proceeding, where there needs to be a hearing
13   on conflict, but we are concerned that there's just a further
14   sort of entrenchment of Mr. Ilyas Khrapunov's role in Mr.
15   Petelin's response to the subpoenas and the hearing, and we're
16   seeing that relationship begin to be put back.

17            THE COURT:  OK.  I mean I previously directed Mr.
18   Illovsky to use a translator other than Mr. Khrapunov.

19            I would expect, Mr. Illovsky, that you'd do that in
20   connection with discovery in this case, and I would ask that
21   the parties bring a translator to the hearing on the 24th.

22            MR. WENNER:  Thank you, your Honor.

23            THE COURT:  Mr. Illovsky, anything further?

24            MR. ILLOVSKY:  Just to understand the Court's process,
25   is there any prehearing briefing that the Court wants, or is it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:18-mc-00227-AJN-KHP   Document 54   Filed 06/28/19   Page 14 of 14    14
J64WmisC

1  all in the form of posthearing supp?
2          THE COURT:  I don't need any prehearing briefing.  I
3  know what the issue is, and the parties can just present their
4  evidence and response, and then posthearing briefing will be
5  sufficient.
6          MR. ILLOVSKY:  OK.  Thank you.
7          THE COURT:  All right.  Mr. Illovsky, I'll let you
8  drop now, and we'll turn to the main action.
9          MR. ILLOVSKY:  Thank you, your Honor.
10         THE COURT:  Thank you.
11         (Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300